DICKINSON,
Presiding Justice, concurring in part and in result:
¶ 33. Today — without saying so, and without implementing our usual rule-making procedures — this Court adopts Federal Rule of Evidence 414. That said, I do agree with the majority that, under the facts of this case, Green’s prior sexual misconduct was admissible. But I do not agree with the majority’s reasoning as to why it was admissible. And because the distinction is an important one (make no mistake, all prior sexual misconduct will now be admissible) I respectfully concur in the majority’s result, but not its reasoning.
¶ 34. Rule 404(b) prohibits the use of “other crimes, wrongs, or acts (often referred to as “prior bad acts”) for the purpose of showing that the defendant acted “in conformity” with those prior bad acts. There are no exceptions to this rule.[23] While Rule 404(b) does allow the use of “prior bad acts” for other purposes, simple logic requires us to conclude that, if the evidence is being used for other purposes, it is not being used for the prohibited purpose and is therefore not an exception.[24]
¶ 35. Prior opinions of this Court have erroneously referred to Rule 404(b)’s “other purposes” as exceptions.[25] The confusion may be traced to an error in Rule 404(b)’s comment which erroneously labels as “exceptions” the other purposes for which evidence of prior bad acts may be admitted.[26] Only one other state has made the same mistake,[27] while all other states *556 have been more careful. For instance, the comment to Alabama’s Rule 404(b) correctly avoids the “exceptions” label by stating:
The general rule excluding character evidence does not bar evidence of specific acts when that evidence is offered for some purpose other than the impermissible one of proving action in conformity with a particular character. While section (b) does not purport to provide an exhaustive listing of proper purposes, it states that proper purposes may include proving such things as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.[28]
¶ 36. Mississippi’s Rule 404(b) does not prohibit evidence of a prior bad act for purposes other than proving a person acted in conformity with the prior bad act. The rule states:
Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
¶ 37. While the rule lists several specific, acceptable purposes for which prior bad acts may be used as evidence, the phrase “such as” clearly allows for other purposes not listed. And this case, in my view, presents this Court an opportunity to adopt what is commonly referred to as the “doctrine of chances.”[29]

The doctrine of chances

¶ 38. The doctrine of chances — as adopted by and applied in several states[30] —has its origin in the English case Rex v. Smith, in which the defendant was charged with murdering his wife by drowning her in a bathtub.[31] At trial, the judge allowed the prosecution to introduce evidence that two of the defendant’s previous wives also had “accidentally” drowned in bathtubs.[32] The Court of Criminal Appeal held that, because of its striking similarity, the evidence was admissible.[33]
¶ 39. Following the language and reasoning set forth in Rex, Michigan has applied the doctrine of chances — otherwise known as the “doctrine of objective improbability” — on several occasions.[34] For instance, in People v. Mardlin, the Michigan Supreme Court applied the doctrine where a defendant was charged with arson and burning insured property.[35] The court held that the evidence of past fires was logically relevant to the objective probability that the defendant intentionally set fire to his home.[36] The court, when discussing the doctrine of chances, noted that
*557 the doctrine describes a logical link, based on objective probabilities, between evidence of past acts or incidents that may be connected with a defendant and proper, noncharacter inferences that may be drawn from these events on the basis of their frequency.[37]
¶ 40. Michigan’s application of the doctrine of chances is equally appropriate in sexual-abuse cases. The predicate for using the doctrine in sexual-abuse cases, wrote one commentator, “relies on the improbability that one individual would be the object of repeated false accusations.”[38]
¶ 41. The key is that the evidence of prior sexual misconduct, in these instances, is not admitted to attack the defendant’s character, or to show that the defendant has a propensity for committing the alleged act; instead, it is admitted to show the improbability that the defendant would be accused falsely multiple times.

True purpose of the evidence

¶ 42. Although the majority recognizes the similarities among the charged offense in this case and Green’s prior bad acts, it incorrectly concludes that those similarities fit Rule 404(b)’s listed noncharacter purposes. But the four prior incidences occurred long before Green knew the victim in this case — and at least one before she was even born. For example, when M.S. alleges she was abused by Green, the victim in this case was not yet born; so the purpose of the evidence of Green’s abuse of M.S. was certainly not to show his “motive, opportunity, intent, preparation, [or] plan” to abuse the victim who, at that time, was not even born.
¶ 43. But the evidence was clearly probative for a purpose unrelated to Green’s character. At trial, four witnesses testified that when Green sexually abused them they were young, they were related to Greene, and he digitally penetrated them. Under the doctrine of chances, the evidence is relevant because it is unlikely that the same defendant would be subjected to multiple false accusations so similar to one another, especially in sexual-abuse cases where victims already are unwilling — or unable — to come forward. The exclusion of this evidence, therefore, is based on probability, not propensity.
¶ 44. This view also has found support outside of court:
Given the infrequent occurrence of false rape and child abuse allegations relative to the entire eligible population, the probability that the same innocent person will be the object of multiple false accusations is extremely low. That conclusion is based on the so-called product rule, which posits that the probability that two independent events will occur together is calculated by multiplying the probability that each will occur alone.[39]
¶ 45. As Wigmore wrote, “it is the mere repetition of instances, and not their system or scheme, that satisfies our logical demand. Yet, in order to satisfy this demand, it is at least necessary that prior acts should be similar.”[40] And because of the similarities among the accusations in this case — namely, the ages of the victims and the manner of the crime — and the frequency of prior misconduct, I agree *558 with the majority that the trial court did not abuse its discretion in admitting the evidence. But to admit it by calling it what it is not — plan, motive, etc. — is a slippery slope that invites complete abrogation of Rule 404, and mandates adoption of Federal Rule of Evidence 414. I therefore concur in part and in result.
WALLER, C.J., RANDOLPH, LAMAR AND PIERCE, JJ„ JOIN THIS OPINION IN PART.

. Miss. R. Evid. 404(b).

. See id.

. E.g., Hargett v. State, 62 So.3d 950, 953 (Miss.2011); Palmer v. State, 939 So.2d 792, 795 (Miss.2006).

. See Miss. R. Evid. 404(b) cmt.

. La.Code Evid. Ann. art. 404(b) cmt. (1988).

.' Ala. R. Evid. 303(b) cmt.

. 2 John H. Wigmore, Wigmore on Evidence § 302, 245 (Chadbourae rev. ed., 1979).

. E.g., People v. Spector, 194 Cal.App.4th 1335, 128 Cal.Rptr.3d 31, 65-68 (2011); Robbins v. State, 88 S.W.3d 256, 267-68 (Tex.Crim.App.2002); People v. Mardlin, 487 Mich. 609, 790 N.W.2d 607, 614-15 (2010).

. Robbins, 88 S.W.3d at 267 (citing Rex v. Smith, 11 Crim.App. R. 229, 84 L.J.K.B. 2153, 2154(1915)).

. Id. (citing Rex, 84 L.J.K.B. at 2154).

. Id.

. E.g., Mardlin, 790 N.W.2d at 612-14; People v. Crawford, 458 Mich. 376, 582 N.W.2d 785 (1998).

. Mardlin, 790 N.W.2d at 612-14.

. Id. at 617.

. Id. at 613.

. Mark Cammack, Using the Doctrine of Chances to Prove Actus Reus in Child Abuse and Acquaintance Rape: People v. Ewoldt Reconsidered, 29 U.C. Davis L. Rev. 355, 393 (1996) ("The perception that repeated false rape accusations are highly improbable is in part the result of our belief that repeated rapes by the same person are highly probable.”).

. Id. at 397, 790 N.W.2d 607/

. Wigmore at 245: